Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiffs*
*Tapestry, Inc., Coach IP Holdings LLC,*
*Stuart Weitzman IP, LLC and Kate Spade LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAPESTRY, INC., COACH IP HOLDINGS LLC, STUART WEITZMAN IP, LLC and KATE SPADE LLC, <br><br> *Plaintiffs* <br><br> v. <br><br> BAOQINGTIANFF, CHEAPSELL511, HANGHAIKKK, LONGVUI1508, MANZHENGYIN, NENGNENG1588, TAISHAN2536, VRVXOBYQQH1951739, WYTWFC, YESHENLE16, ZXQ227, CHUNTIAN158A, MINL5159, SHUNFENGSHUNSHUI58, ADDS1688, FACAITONG, FANFU118, FREEMENX, HONGHUA68, LINJIEGUANG8, MISSWU2017, QINGYANG106, RENZAIJIANGHU9898, SAHARA2006, TEA74, TFHHAO5DAY, TOPBEST2011BAG, YUANMUZHEN, AND ZHOUZAIQIANG123, <br><br> *Defendants* | CIVIL ACTION No. ___ <br><br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> **FILED UNDER SEAL** |

Plaintiffs Tapestry, Inc., a Maryland corporation, Coach IP Holdings LLC, a limited liability company duly organized and existing under the laws of the State of Delaware, Stuart Weitzman IP, LLC, a limited liability company duly organized and existing under the laws of the State of Delaware and Kate Spade LLC, a limited liability company duly organized and existing under the laws of the State of Delaware, by and through their undersigned counsel, allege as follows:

## <u>NATURE OF THE ACTION</u>

This action involves claims for trademark infringement of Plaintiffs' federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; counterfeiting of Plaintiffs' federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)) and related state and common law claims (the "Action") arising from Defendants baoqingtianff, cheapsell511, hanghaikkk, longvui1508, manzhengyin, nengneng1588, taishan2536, vrvxobyqqh1951739, wytwfc, yeshenle16, zxq227, chuntian158a, minl5159, shunfengshunshui58, adds1688, facaitong, fanfu118, freemenx, honghua68, linjieguang8, misswu2017, qingyang106, renzaijianghu9898, sahara2006, tea74, tfhhao5day, topbest2011bag, yuanmuzhen, and zhouzaiqiang123 (hereinafter collectively referred to as "Defendants" or individually as "Defendant") infringement of the Tapestry Marks (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiffs' Tapestry Products (as defined *infra*).

## JURISDICTION AND VENUE

1.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

2.      Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or, in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

a.   Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as iOffer.com, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or

associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the U.S., including New York, can view the one or more of Defendants' Merchant Storefronts (as defined *infra*) that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.   Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically in New York.

c.   Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S.

d.   Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e.   Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f.   Upon information and belief, Defendants are aware of Plaintiffs and their Tapestry Products and Tapestry Marks and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiffs in the U.S. and specifically in New York and this judicial district, as Plaintiffs conduct business in New York and are headquartered in New York.

3.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in this judicial district.

## THE PARTIES

4.      Plaintiff Tapestry, Inc., formerly known as Coach, Inc., ("Tapestry") is a Maryland corporation which is registered to do business in the State of New York and has its principal place of business at 10 Hudson Yards, New York, New York 10001.

5.      Plaintiff Coach IP Holdings LLC ("Coach") is a limited liability company duly organized and existing under the laws of the State of Delaware with its headquarters in New York, New York, and is an indirectly wholly-owned subsidiary of Tapestry.

6.      Plaintiff Stuart Weitzman IP, LLC ("Stuart Weitzman") is a limited liability company duly organized and existing under the laws of the State of Delaware with its headquarters in New York, New York, and is an indirectly wholly-owned subsidiary of Tapestry.

7.     Plaintiff Kate Spade LLC ("Kate Spade") is a limited liability company duly organized and existing under the laws of the State of Delaware, with its headquarters in New York, New York, and is an indirectly wholly-owned subsidiary of Tapestry.

8.     Upon information and belief, Defendants are merchants on the Wish.com, Alibaba.com, AliExpress.com, DHgate.com and/or the iOffer.com online marketplace platforms, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Plaintiffs and Their Well-Known Tapestry Products

9.     Plaintiff Tapestry is the ultimate parent corporation of Plaintiffs Coach, Stuart Weitzman and Kate Spade (Tapestry, Coach, Stuart Weitzman and Kate Spade are collectively hereinafter referred to as "Plaintiffs").

10.    Tapestry is a New York-based fashion house of modern luxury lifestyle brands that designs, manufactures, markets, distributes and sells a variety of high-quality luxury goods, such as handbags, wallets, shoes, jewelry, eyewear, watches, ready-to-wear and accessories (collectively, "Tapestry Products") under its Coach, Stuart Weitzman and Kate Spade brands.

11.    The Tapestry Products are distributed through various channels of trade in the U.S. and abroad, including Plaintiffs' own retail and outlet stores located in prominent fashion epicenters such as New York City, Paris, London, Tokyo, Hong Kong, Beijing, Shanghai and Singapore, , as well as through authorized third parties such as department stores and online through Plaintiffs' own websites (available at https://www.coach.com, https://www.katespade.com and https://www.stuartweitzman.com).

12.    Examples of the retail value of Tapestry Products are as follows:

a.     between $285 and $1,500 for Coach handbags;

    b.      between $375 and $800 for Stuart Weitzman shoes and boots; and

    c.      between $100 and $500 for Kate Spade handbags.

13.    While Plaintiffs have gained significant common law trademark and other rights in the Tapestry Products through use, advertising and promotion, they also protected their valuable rights by filing for and obtaining federal trademark registrations in connection with the Tapestry Products.

14.    For example, Coach is the owner of U.S. Trademark Reg. Nos. 4,744,720, 4,744,721, 4,744,716, 4,744,718 and 4,744,715 for  for a wide variety of goods in classes 9, 14, 16, 18 and 25, U.S. Trademark Reg. Nos. 4,296,582 and 4,359,191 for

for a variety of goods in classes 9, 14, 16, 18 and 25, U.S. Trademark Reg. Nos. 4,499,627, 4,296,584 and 4,168,626 for the wordmark "COACH NEW YORK" for a variety of goods in classes 9, 14, 16, 18 and 25, U.S. Trademark Reg. Nos. 3,354,448, 2,451,168, 1,846,801 and 4,105,689 for the wordmark "COACH" for a variety of goods in class 9, 14 and 25, U.S. Trademark Reg. Nos. 2,534,429 and 1,309,779 for for a variety of goods in classes 9, 16 and 18, U.S. Trademark Reg. Nos. 2,088,706, 2,231,001, 1,071,000 and 0,751,493 for "COACH" for a variety of goods in class 6, 9, 14, 16, 18, 20 and 25, U.S. Trademark Reg. No. 5,041,178 for "COACH 1941" for a variety of goods in class 18, U.S. Trademark Reg. Nos. 2,592,963, 2,626,565, 4,365,898 for  for a variety of goods in classes 9, 18, 22

and 39, U.S. Trademark Reg. Nos. 4,105,636 and 4,365,899 for                              for a variety of

goods in classes 9, 14, 18 and 25, (collectively hereinafter referred to as the "Coach Marks").

15.    Additionally, Kate Spade is the owner of U.S. Trademark Reg. Nos. 4,889,147,



5,032,905, 5,028,262 and 5,205,421 for                        for a variety of goods in classes 9, 14, 18 and

25, U.S. Trademark Reg. Nos. 4,138,884, 3,095,754, 3,092,920 and 2,654,803 for the wordmark

"KATE SPADE NEW YORK" for a variety of goods in classes 9, 16, 14, 18, U.S. Trademark



Reg. Nos. 4,155,451, 4,155,450, 4,017,099,  4,158,419 and 4,158,410  for                    for a

variety of goods in classes 9, 14, 16, 18 and 25, U.S. Trademark Reg. Nos. 2,613,247 and

2,537,318 for "KATE SPADE NEW YORK" for a variety of goods in classes 18 and 25, U.S.

Trademark Reg. Nos. 2,578,942, 2,522,892 and 2,064,708 for "KATE SPADE" for a variety of

goods in classes 9, 18 and 25, U.S. Trademark Reg. No. 2,068,911 for the wordmark "KATE

SPADE" for a variety of goods in class 18 (collectively hereinafter referred to as the "Kate Spade

Marks").

16.    Further, Stuart Weitzman is the owner of U.S. Trademark Reg. Nos. 5,100,091,

5,100,087, 5,100,083 and 3,474,821 for the wordmark "STUART WEITZMAN" for a variety of

goods in classes 3, 16, 18, 25 and 35 and U.S. Trademark Reg. No. 1,386,002 for "STUART

WEITZMAN" for a variety of goods in classes 18 and 25 (collectively, hereinafter referred to as

the "Stuart Weitzman Marks").

17.     Tapestry is the parent company of Coach, Stuart Weitzman and Kate Spade, and is authorized to enforce all rights in the Coach Marks, Kate Spade Marks and Stuart Weitzman Marks (collectively, the Coach Marks, Kate Spade Marks and Stuart Weitzman Marks are hereinafter referred to as the "Tapestry Marks").  True and correct copies of the registration certificates for the Tapestry Marks are attached hereto as **Exhibit A** and are incorporated herein by reference.

18.     The Tapestry Marks are currently in use in commerce in connection with the Tapestry Products and were first used in commerce on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit A.

19.     U.S. Trademark Reg. Nos. 4,296,584, 4,168,626, 3,354,448, 2,451,168, 1,846,801, 4,105,689, 2,534,429, 1,309,779, 2,231,001, 4,296,582, 2,592,963, 2,626,565, 4,105,636, 2,088,706, 1,071,000, 0,751,493, 4,138,884, 3,095,754, 3,092,920, 2,654,803, 4,155,451, 4,155,450, 4,017,099, 4,158,419, 4,158,410, 2,613,247, 2,537,318, 2,578,942, 2,522,892, 2,064,708, 2,068,911, 3,474,821 and 1,386,002 are valid, subsisting and incontestable.

20.     Plaintiffs have spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in the Tapestry Products and the Tapestry Marks.

21.     The success of the Tapestry Products is due in part to Plaintiffs' marketing and promotional efforts.  These efforts include, but are not limited to, advertising and promotion of the Tapestry Products through print, social media, retailer websites and other internet-based advertising and campaigns, among other efforts, both domestically and abroad, including in New York.

22.     Plaintiffs' success is also due to their use of high-quality materials and processes in making the Tapestry Products.

23.     Additionally, the success of the Tapestry Products is due to demand by their consumers and word-of-mouth buzz that their consumers have generated.

24.     Plaintiffs' efforts, the quality of their Tapestry Products, their marketing, promotion and distribution efforts and the word-of-mouth buzz generated by their consumers have made the Tapestry Products and Tapestry Marks prominently placed in the minds of the public.  Retailers, retail buyers, consumers and members of the public have become familiar with Tapestry Products and associate them exclusively with Plaintiffs.

25.     Plaintiffs have gone to great lengths to protect their interests in the Tapestry Products and Tapestry Marks.  Only entities with written permission from Plaintiffs are authorized to manufacture, import, export, advertise, offer for sale or sell goods utilizing the Tapestry Marks.

### iOffer and Defendants' User Accounts

26.     iOffer.com is a San Francisco, California-based online marketplace and e-commerce platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating primarily from China,[1] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "iOffer").[2]

27.     A majority of the third-party merchants that have User Accounts with and operate Merchant Storefronts on iOffer, like Defendants, are located in China.[3]

---

[1] *See Chanel, Gucci, Louis Vuitton File Suits Against Individual Online Marketplace Sellers*, THE FASHION LAW (Feb. 2, 2017), http://www.thefashionlaw.com/home/chanel-gucci-file-suit-against-individual-online-marketplace-sellers.
[2] *See* iOFFER.COM, About Us, https://www.ioffer.com/info/about_us.
[3] *See Chanel, Gucci, Louis Vuitton*, *supra* note 1; *see also* Paula Rosenblum, *Look out Main Street, Alibaba is Moving in*, FORBES (June 11, 2014), https://www.forbes.com/sites/paularosenblum/2014/06/11/look-out-main-street-alibaba-is-moving-in.

28.     Currently, iOffer has more than 100 million consumer products for sale from thousands of active users.[4]  In total, iOffer claims a base of millions of users worldwide.[5]  Since it launched in 2002, iOffer has become the fastest growing interactive social commerce platform and can be accessed in over 190 countries.[6]

29.     As recently addressed in news reports,[7] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on iOffer,[8] an astronomical number of counterfeit and infringing products are offered for sale and sold on iOffer at a rampant rate.[9]

30.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on iOffer, as well as potentially yet undiscovered additional online marketplace platforms.

31.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including in New York, and throughout the world.

---

[4] *See supra* note 2.
[5] *See id.*
[6] *See iOffer*, LINKEDIN, https://www.linkedin.com/company/ioffer.
[7] *See Spyderco Files Counterfeit Suit Against iOffer, Inc.*, KNIFENEWS (July 26, 2018), https://knifenews.com/spyderco-files-counterfeit-suit-against-ioffer-inc/.
[8] *See, e.g.*, *Pink Floyd (1987) Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 18-cv-3996 (N.D. Ill., June 8, 2018); *Adidas AG, et al. v. 2cn0931, et al.*, Civil Case No. 18-cv-60758 (S.D. Fl., April 8, 2018); *David Gilmour Music Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 17-cv-7763 (N.D. Ill., Nov. 1, 2017).
[9] *See Chanel, Gucci, Louis Vuitton*, *supra* note 1; *see also Richemont Targets Counterfeiters in Lawsuit*, TRADEMARKS & BRANDS ONLINE (Sept. 2, 2015), https://www.trademarksandbrandsonline.com/news/richemont-targets-counterfeiters-in-lawsuit-4471; Susan Reda, *Store Trends: February 2017*, NATIONAL RETAIL FEDERATION (Feb. 1, 2017), https://nrf.com/blog/stores-trends-february-2017; *Adidas, Reebok Crack Down on Counterfeit Sellers on Instagram*, THE FASHION LAW (April 16, 2018), http://www.thefashionlaw.com/home/adidas-reebok-crack-down-on-counterfeit-sellers-on-instagram.

<u>**Defendants' Wrongful and Infringing Conduct**</u>

32.     Particularly in light of Plaintiffs' success with their Tapestry Products, as well as the reputation they have gained, Plaintiffs and their Tapestry Products have become targets for counterfeiting and unscrupulous individuals and entities who wish to profit on and exploit the goodwill, reputation and fame Plaintiffs have built in their Tapestry Products and Tapestry Marks.

33.     As part of these efforts, Plaintiffs retained New Alchemy Limited ("NAL"), a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on online marketplace platforms such as Wish.com, Alibaba.com, AliExpress.com, DHgate.com and iOffer.com.

34.     Through NAL's investigative and enforcement efforts, Plaintiffs learned of Defendants' actions which vary and include, but are not limited to, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing or used in connection with the Tapestry Marks, and/or products in packaging and/or containing labels bearing the Tapestry Marks, and/or bearing or used in connection with marks that are confusingly similar to the Tapestry Marks and/or products that are identical or confusingly similar to the Tapestry Products (collectively referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in New York, through Defendants' User Accounts and Merchant Storefronts.  Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit B** attached hereto and incorporated herein by reference**.**

35.     Defendants are not, and have never been, authorized by Plaintiffs or any of their authorized agents to copy, manufacture, import, export, advertise, distribute, offer for sale or sell

Tapestry Products or to use the Tapestry Marks, or any marks that are confusingly similar to the Tapestry Marks.

36.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiffs' Tapestry Products, with only minor variations that ordinary consumers would not recognize.

37.     During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located in in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit B** attached hereto and incorporated herein by reference**.**

38.     NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York.  NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit B** attached hereto and incorporated herein by reference.

39.     For example, below on the left is an image of one of Plaintiffs' Tapestry Products, which has a retail price of $298.00.  Depicted below on the right is a listing for Defendant minl5159's Counterfeit Product ("minl5159 Infringing Listing" and "minl5159 Counterfeit Product," respectively).  The minl5159 Infringing Listing appears on Defendant minl5159's Merchant Storefront, https://www.ioffer.com/i/women-s-kate-spade-handbags-shoulder-purse-wallets-bags-650858917, and offers the minl5159 Counterfeit Product for $36.00 per item, using,

featuring and/or incorporating one or more of the Tapestry Marks and/or confusingly similar marks in the listing title "WOMEN HANDBAG CLUTCH LEATHER PURSE **KATE SPADE HANDBAGS**" (emphasis added) and in the descriptions and/or product images in the body of the listing.  Further, the minl5159 Counterfeit Product is virtually identical to one of the Tapestry Products and features and/or incorporates one or more of the Tapestry Marks.  There is no question that the minl5159 Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Tapestry Products or to mislead consumers to believe the minl5159 Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Tapestry Marks:

| **Tapestry Product** | **minl5159 Infringing Listing** |
|:---:|:---:|
|  |  |

40.    By way of another example, below on the left is an image of one of Plaintiffs' Tapestry Products, which has a retail price of $398.00.  Depicted below on the right is a listing for Defendant adds1688's Counterfeit Product ("adds1688 Infringing Listing" and "adds1688 Counterfeit Product," respectively).  The adds1688 Infringing Listing appears on Defendant

adds1688's Merchant Storefront, https://www.ioffer.com/i/2018-stuart-weitzman-women-buckskin-heels-single-shoes-644160298?i=435088912, and offers the adds1688 Counterfeit Product for $93.00 per item, using, featuring and/or incorporating one or more of the Tapestry Marks and/or confusingly similar marks in the listing title "2018 **STUART WEITZMAN WOMEN' BUCKSKIN HEELS SINGLE SHOES**" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the adds1688 Counterfeit Product is virtually identical to one of the Tapestry Products and features and/or incorporates one or more of the Tapestry Marks. There is no question that the adds1688 Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Tapestry Products or to mislead consumers to believe the adds1688 Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Tapestry Marks:

**<u>Tapestry Product</u>**              **<u>adds1688 Infringing Listing</u>**




41.    As another example, below on the left is an image of one of Plaintiffs' Tapestry Products, which has a retail price of $395.00. Depicted below on the right is a listing for Defendant baoqingtianff's Counterfeit Product ("baoqingtianff Infringing Listing" and "baoqingtianff Counterfeit Product," respectively). The baoqingtianff Infringing Listing appears on Defendant

baoqingtianff's Merchant Storefront, https://www.ioffer.com/i/coach-women-s-handbags-backpack-travel-bags-coach-01l-623488235?i=421581980, and offers the baoqingtianff Counterfeit Product for $20.00 per item, using, featuring and/or incorporating one or more of the Tapestry Marks and/or confusingly similar marks in the listing title "**COACH** WOMEN'S HANDBAGS BACKPACK TRAVEL BAGS **COACH** 01L" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the baoqingtianff Counterfeit Product is virtually identical to one of the Tapestry Products and features and/or incorporates one or more of the Tapestry Marks. There is no question that the baoqingtianff Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' Tapestry Products or to mislead consumers to believe that the baoqingtianff Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the Tapestry Marks:

|  **Tapestry Product**  |  **baoqingtianff Infringing Listing**  |
|---|---|

 

42.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying,

offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiffs' rights in the Tapestry Marks, and have used marks that are confusingly similar to, identical to and/or constitute counterfeiting and/or infringement of the Tapestry Marks in order to confuse consumers into believing that such Counterfeit Products are Tapestry Products and aid in the promotion and sales of their Counterfeit Products.  Defendants' conduct began long after Plaintiffs' adoption and use of the Tapestry Marks, after Plaintiffs obtained the federal registrations in the Tapestry Marks, as alleged above, and after Plaintiffs' Tapestry Products and Tapestry Marks became well-known to the public and purchasing community.

43.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the Tapestry Marks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Tapestry Products, and, in bad faith, adopted the Tapestry Marks.

44.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs the Tapestry Marks and Tapestry Products.

45.     Defendants' dealings in Counterfeit Products, as alleged herein, have caused and will continue to cause confusion, mistake, economic loss, and have deceived and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

46.     By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to

17

cause irreparable harm to Plaintiffs: infringed and counterfeited the Tapestry Marks, committed

unfair competition and unfairly and unjustly profited from such activities at Plaintiffs' expense.

47.     Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34 and 35 of the Lanham Act,
15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)))**

48.     Plaintiffs replead and incorporate by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

49.     Plaintiffs are the exclusive owners of all right and title to the Tapestry Marks.

50.     Plaintiffs have continuously used the Tapestry Marks in interstate commerce since

on or before the dates of first use as reflected in the registration certificates attached hereto as

**Exhibit A**.

51.     Without Plaintiffs' authorization or consent, with knowledge of Plaintiffs' well-

known and prior rights in their Tapestry Marks and with knowledge that Defendants' Counterfeit

Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably

imitated the Tapestry Marks and/or used spurious designations that are identical with, or

substantially indistinguishable from, the Tapestry Marks on or in connection with the

manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering

for sale and/or sale of Counterfeit Products.

52.     Defendants have manufactured, imported, exported, advertised, marketed,

promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the

purchasing public in direct competition with Plaintiffs, in or affecting interstate commerce, and/or

have acted with reckless disregard of Plaintiffs' rights in and to the Tapestry Marks through their participation in such activities.

53.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Tapestry Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiffs, thereby making substantial profits and gains to which they are not entitled in law or equity.

54.     Defendants' unauthorized use of the Tapestry Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Tapestry Marks.

55.     Defendants' actions constitute willful counterfeiting of the Tapestry Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

56.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiffs, their business, reputation and valuable rights in and to the Tapestry Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will

continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and their valuable Tapestry Marks.

57.     Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained and will sustain as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[115 U.S.C. § 1114/Lanham Act § 32(a)]**

58.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59.     Plaintiffs have continuously used the Tapestry Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificates attached hereto as **Exhibit A**.

60.     Plaintiffs, as owners of all right, title and interest in and to the Tapestry Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

61.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiffs are the owners of the federal trademark registrations for the Tapestry Marks.

62.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiffs, as the registered trademark owners of the Tapestry Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display,

retail, offer for sale and/or sell Tapestry Products and/or related products bearing the Tapestry Marks into the stream of commerce.

63.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or colorable imitations of the Tapestry Marks and/or which are identical or confusingly similar to the Tapestry Marks.

64.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Tapestry Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

65.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiffs are the owners of all rights in and to the Tapestry Marks.

66.     Defendants' egregious and intentional use of the Tapestry Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiffs' Tapestry Products or are otherwise associated with, or authorized by, Plaintiffs.

67.     Defendants' actions have been deliberate and committed with knowledge of Plaintiffs' rights and goodwill in the Tapestry Marks, as well as with bad faith and the intent to

cause confusion, mistake and deception.

68. Defendants' continued, knowing and intentional use of the Tapestry Marks without Plaintiffs' consent or authorization constitutes intentional infringement of Plaintiffs' federally registered Tapestry Marks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

69. As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiffs have suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights in and to the Tapestry Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiffs and the valuable Tapestry Marks.

70. Based on Defendants' actions as alleged herein, Plaintiffs are entitled to injunctive relief, damages for the irreparable harm that Plaintiffs have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

71. Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72. Plaintiffs, as the owners of all right, title and interest in and to the Tapestry Marks, have standing to maintain an action for false designation of origin and unfair competition under

the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

73.     The Tapestry Marks are inherently distinctive and/or have acquired distinctiveness.

74.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly similar to, and constitute reproductions of the Tapestry Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' Counterfeit Products are Tapestry Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Tapestry Marks to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

75.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiffs' Tapestry Products using marks that are identical and/or confusingly similar to, or which constitute colorable imitations of the Tapestry Marks, Defendants have traded off of the extensive goodwill of Plaintiffs and their Tapestry Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiffs.  Such conduct has permitted and will continue to permit

Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs and their Tapestry Marks, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

76.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of the Tapestry Marks would cause confusion, mistake or deception among purchasers, users and the public.

77.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiffs, their Tapestry Products and Tapestry Marks.

78.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving Plaintiffs of sales of their Tapestry Products and by depriving Plaintiffs of the value of their Tapestry Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of Tapestry Marks.

79.     Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(Violation of Deceptive Acts and Practices Unlawful)**
**[N.Y. Gen. Bus. Law § 349]**

80.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81.     Through Defendants' unlawful, unauthorized and unlicensed use of the Tapestry Marks on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiffs' Tapestry Products, Defendants have engaged in consumer-oriented conduct that has adversely affected the public interest and has resulted in injury to consumers in New York.

82.     Defendants' aforementioned conduct was and is a willful and deliberate attempt to mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business, trade or commerce.  Such conduct has deceived and materially mislead or has a tendency to deceive and materially mislead the consuming public, and has injured and will continue to injure Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 349.

83.     As a result of Defendants' actions alleged herein, Plaintiffs have suffered and will continue to suffer irreparable harm for which they have no adequate remedy at law.

84.     Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

## FIFTH CAUSE OF ACTION
### (False Advertising Unlawful)
### [N.Y. Gen. Bus. Law § 350]

85.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     Without the authorization of Plaintiffs, Defendants have used the Tapestry Marks and/or marks and/or packaging designs that are identical and/or confusingly similar to the Tapestry Marks in connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiffs' Tapestry Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

87.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured and will continue to injure Plaintiffs' business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 350.

88.     As a result of Defendants' actions alleged herein, Plaintiffs have suffered and will continue to suffer irreparable harm for which they have no adequate remedy at law.

89.     Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiffs are entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

90.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

91.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off of the extensive goodwill of Plaintiffs and their Tapestry Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiffs.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

92.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

93.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

94.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiffs, and their competitive positions while benefiting Defendants.

95.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiffs have been and will continue to be deprived of substantial sales of their Tapestry Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been and will continue to be deprived of the value of their Tapestry Marks as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law.

96.     As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**[New York Common Law]**

97.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

99.     Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and against each of them, as follows:

A.     For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble

damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.      In the alternative to Defendants' profits and Plaintiffs' actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiffs may elect prior to the rendering of final judgment;

C.      For an award of Defendants' profits and Plaintiffs' damages in an amount to be proven at trial for willful trademark infringement of Plaintiffs' federally registered Tapestry Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.      For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law § 349(h);

F.      For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law § 350(e);

G.      For an award of damages to be proven at trial for common law unfair competition;

29

H.      For an award of damages in an amount to be proven at trial for unjust enrichment;

I.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

   i.   manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

  ii.   directly or indirectly infringing in any manner any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Tapestry Marks;

 iii.   using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Tapestry Marks to identify any goods or services not authorized by Plaintiffs;

  iv.   using any of Plaintiffs' trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Tapestry Marks, or any other marks that are confusingly similar to the Tapestry Marks on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.  using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.  engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.  engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.  engaging in any other act in derogation of Plaintiffs' rights;

ix.  secreting, destroying, altering, removing or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.  from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or

evidence relating to Defendants' User Accounts or Merchant Storefronts, any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to financial accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefronts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"), and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi. from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court;

xii. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

xiii. providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiv. instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xiii) above; and

J.       For an order of the Court requiring that Defendants recall from any distributors and

retailers and deliver up to Plaintiffs for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation, the Tapestry Marks, or bear any marks that are confusingly similar to the Tapestry Marks;

K.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiffs any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiffs' trademarks, copyrights or other rights including, without limitation, the Tapestry Marks, or bear any marks that are confusingly similar to the Tapestry Marks pursuant to 15 U.S.C. § 1118;

L.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

M.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiffs;

N.      For an award of exemplary or punitive damages in an amount to be determined by the Court;

O.      For Plaintiffs' reasonable attorneys' fees;

P.      For all costs of suit; and

Q.     For such other and further relief as the Court may deem just and equitable.

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs respectfully demand a trial by jury on all claims.

Dated:  August 20, 2018                                   Respectfully submitted,

                                                                         EPSTEIN DRANGEL LLP

                                                                         BY:
                                                                         Mary Kate Brennan (MB 5595)
                                                                         mbrennan@ipcounselors.com
                                                                         Spencer Wolgang (SW 2389)
                                                                         swolgang@ipcounselors.com
                                                                         Ashly E. Sands (AS 7715)
                                                                         asands@ipcounselors.com
                                                                         Jason M. Drangel (JD 7204)
                                                                         jdrangel@ipcounselors.com
                                                                         Brieanne Scully (BS 3711)
                                                                         bscully@ipcounselors.com
                                                                         60 East 42nd Street, Suite 2520
                                                                         New York, NY 10165
                                                                         Telephone:     (212) 292-5390
                                                                         Facsimile:     (212) 292-5391
                                                                         *Attorneys for Plaintiffs*
                                                                         *Tapestry, Inc., Coach IP Holdings*
                                                                         *LLC, Stuart Weitzman IP, LLC and*
                                                                         *Kate Spade LLC*